May it please the Court, I'm Paul Kulioski, counsel for Appellant Dr. Jackson. In this case, the Medical Board publicized to the entire world through the national databases Where is he now? Where is Dr. Jackson now? I mean, how is he now? How's he doing? Well, he has found other employment. But he has had quite a difficult time since this case began. Because of the national reports, he's had difficulty getting medical malpractice insurance. He's had difficulty finding positions. It's had quite an effect on his career. Okay. All right. Go ahead. It's no small matter. He's employed still as a doctor? He is working as a doctor. The Board filed this report although the databank guidelines instructed the Board not to file. It did so even after its own psychiatrist had found that the charges against him weren't true. And it filed after the interim suspension order had already been lifted. The report was false when filed. And the Board knew it. It has stubbornly refused to retract that claim until today. But this is not a defamation case. This was filed as a disability claim. Correct? Yes. Well, it was filed. I'm not quite sure I understand what you mean. He wasn't filing for disability. He was the Board was going after his license. There was a hearing. No. But you're talking about falsity in the sense that it sounds like falsity is an element of something. But the claim in the complaint is for a violation of the ADA. Falsity goes to the issue of deliberate indifference, the element of the ADA cause of action. And that's basically your claim, is it not? An ADA claim, yes. Absolutely right. So what relief are you seeking? There's a claim for money damages. And perhaps equally important, we want the false claim removed from the national database. The doctor's good name has been besmirched. I can see that you have a claim to remove his name from the database. But are you able to get damages from a state agency or should you have been seeking those against the individual who worked for the Board who didn't do the right thing? It is worth noting that the Medical Board implicitly concedes at least that there is negligence in this case. Yes, but you're not answering my question. Can you get money damages against a state agency, or must you be suing the individual who worked for the Board and find that he was acting outside of the scope of his state obligations? I suppose the most honest answer is I'm really not quite sure. This case comes to us on summary judgment. It's been short-circuited. We're still working on the liability area, and we haven't worked out at the trial court level the damages issue. Well, this would be something you would have to be telling us, that when you amend your complaint, that's exactly what you intend to do, and I don't see that anywhere in your papers. Well, when you amend your complaint, what do you expect to do? Let me answer the question this way. I want to withdraw the suggestion in my brief that we might proceed under any other claim than the ADA. That was my mistake, thinking that if this had been a private agency, a private defendant, there would be a number of ways of getting at him. But because of the Eleventh Amendment immunity, we are going to stand or die on the ADA. If we amend, then we will amend to take into account the question of who we can seek damages from. What did you say? You'll do what? We will amend to appropriately seek damages from the appropriate parties. And what are you going to allege when you amend? Don't you say we're trying to help you? You must have a thick head, you know. You listen to us. You've got a tough road to hoe with the ADA. Yes. I believe that we can meet the standards on liability. I haven't thought deeply about damages because, frankly, I won't be trying the case when it goes back to the different parts. But you have to serve and require answers from the parties who are potentially liable. And you can't just, after you go to trial, say, well, yeah, probably we'd better get damages against X when you haven't served X and X hasn't been required to answer. That is absolutely true. I am not sure that we cannot seek damages from the agency itself. That will have to be addressed. But that's what you sued is only that agency. Correct. Yes. That question will have to be addressed on remand. I absolutely agree with you. Yeah, but you have to think all these things through. I agree with you, Your Honor. I can only say I came into this case rather late in the process. Yeah. And I think we may all agree that the lawyering until now has not been as wonderful as Dr. Jackson would have liked. It seems to me that there's a kind of, under the ADA claim, maybe an insurmountable hurdle for your claim in that the disability here was and was known to be and was thought to be only temporary in nature. And that I don't see how you can get around that fact. Your Honor, I believe that we're arguing about the question of what does indefinite mean when they reported that. Indefinite isn't the same as temporary. And temporary isn't the same as short term. I think the question is what would the reasonable person looking at this national database report think when he learns that Dr. Jackson allegedly has a mental impairment that's of indefinite duration. I don't believe that we can assume that's short term. I think that that would be a question that a reasonable jury ought to have had a chance to look at. Now, as I understand it, the way this whole problem came about, Dr. Jackson had been charged with a number of things. Fraud, failure to prescribe appropriately, a whole list of things. Yes. And apparently the doctor was, or his counsel, was not prepared to proceed before the board on those issues and was trying to find a way to get a continuance. And so he apparently got a psychiatrist to say that he was emotionally distressed about the death of his wife and that he needed more recuperative time. So that's what the psychiatrist did for him. This is kind of the way I read the record. And so what do we do with that? The psychiatrist asked for this continuance for him, was getting the continuance. What has happened to the proceedings which started all of this out? Do we know? Has that been settled? Oh, yes, Your Honor. That has been settled and that isn't really terribly germane to these proceedings. Well, it's germane only to the extent, and I don't know if this is what Judge Fletcher was getting at, but if he, in order to gain another benefit, sought this declaration of temporary disability in order to achieve a continuance, is he not stuck with that? I'm not sure if that's what Judge Fletcher was getting at, but that's certainly part of the, potentially part of the analysis. The answer, I think, would be no, and the reason is this. That note was before the report was filed with the National Data Bank. That report was explained. The psychiatrist, Dr. Milgram, meant that he ought to be excused from the upcoming settlement conference. He did not mean that Dr. Jackson couldn't perform his functions as a doctor. Their own psychiatrist, Dr. Lieb, affirmed that. She examined Dr. Jackson and found that he was able to see patients, and the ISO was lifted before the report was filed. It's remarkable that nowhere in the brief of Apolli, the second brief, do they mention Dr. Lieb's report, which is terribly significant. It's a kind of sleight of hand. They're waving the Milgram report in front of you, while they're hiding the Lieb report with the other hand. But the board was not entitled to rely on the Milgram report and ignore the Lieb report, which superseded it. Well, the Lieb report also says that a postponement of three to five months is appropriate because he's in a stage of grief. And so, again, you have this temporariness to it and also the connection to the desire to postpone the legal proceedings. So I don't think the Lieb report eliminates the issue that we've been discussing. Of temporariness. Of temporariness and also of the desire to obtain a postponement as being the motivation to get to these psychiatric reports in the first place. If he had not sought the psychiatric report, none of the rest of this would have happened. It's true that he sought that report, but it's hard to say that that gave the board a right to claim that he had a mental disability. Well, that presumes the answer. Remember that report was filed after Lieb said it's not true. In addition, the guidelines say in this case, where you have an interim suspension that's been stayed, there should be no filing. Why don't we hear from the State? Good morning, Your Honors. Gary Ostrick, Deputy Attorney General, representing the Medical Board of California. Your Honors, it's the Medical Board's position that summary judgment is properly granted and should be affirmed. However, the Medical Board must be able to do its duty to protect the citizens of California, their public health, safety, and welfare, from physicians who may be unable to safely practice medicine. And Dr. Milgram, Dr. Jackson's psychiatrist, said he was temporarily totally disabled. And as a result of this act, it led to an order of the court. And the order of the court was what was reported to the national databanks later on. If not for Dr. Milgram's note, his statement, declaration about Dr. Jackson's ability to perform as a physician, none of the acts that followed would have occurred. Well, now, that may all be true, but should not the Board have immediately corrected the record to show that he was not disabled from practicing law, practicing medicine? Your Honor, as soon as the Medical Board received Dr. Jackson's government claim, they issued and they realized that there hadn't been a follow-up, they hadn't been aware of the disillusion of the interim suspension order. Speak a little louder, please. Sorry, Your Honor. As soon as the Medical Board received Dr. Jackson's government claim and they became aware that there had been disillusion of the interim suspension order, they did issue a new report indicating that the interim suspension order had been dissolved, effective back in July of 2004. At that time, it's undisputed that Cummins at the Medical Board as well as Mr. Thornton, the Executive Director, were not aware that a state suspension was not a reportable event. Well, there were a lot of mix-ups here, weren't there? Yes, Your Honor, there were some bureaucratic errors. What do you mean bureaucratic errors? There were screw-ups, isn't that right? You want to attribute all this to bureaucratic errors? Your Honor, Cummins and the Executive Director of the Medical Board did not know about the official guidance. This is just like in Ferguson where they didn't know about the DOJ manual. Well, let's say that he filed these things in good faith, but once they found that there was no longer any contention that the doctor was psychiatrically disabled, should not the Board have quickly corrected the database? I don't understand why they did not do that and why the state has just stubbornly refused to this day to make the corrections. Your Honor, they did correct at the time that they found out. It wasn't until during the course of litigation that they discovered that it was not a reportable event. Can you speak louder, please? Your Honor, the Medical Board did correct the report, and it wasn't until later on during the course of litigation that they discovered that it was not a reportable event. Well, what did they do to correct? They issued a report indicating that the interim suspension or suspension state had been dissolved as of July 28, 2004. When did they do that? They did that before this lawsuit was filed in, I believe it was April of 2005. They let this go months and months. Your Honor, it was not brought to the Board's attention until early 2005 when Dr. Jackson filed a government claim. Dr. Jackson could have filed a protest to the filing of the National Practitioner's Data Bank Report. There is a section within the Code of Federal Regulations that specifically permits him to file a protest. Does he have to? Does he have to? No, it's voluntary. Well, Your Honor, why doesn't the Board just apologize in writing and file all of that in the national database? They say, we made a terrible mistake here. Why don't they do that? I think there is a way. And we had these bureaucratic mix-ups, huh? And as a result of that, we violated our own rules, and we're sorry and we apologize for whatever anxieties and pain we've caused this doctor. Why don't they do that? Isn't that the decent thing to do? Your Honor, there is a way to void the report, and obviously the parties can discuss that, but that's not a violation of the ADA. I'm not talking about the ADA right now. I'm talking about doing what's fair and just. Do you understand that? Yes, Your Honor. Okay. That's what I'm talking about. Yes, Your Honor. I mean, how would you like to have the State Bar make mistakes like that involving you and some client or some case? You wouldn't like that, would you? Your Honor, I'm here to represent the Medical Board. I know. I know. But you have to think about these things. I mean, you're a representative of the people of this state. Yes, Your Honor. So we'd be happy to discuss that further with Dr. Jackson afterwards. What do you think ought to be done to correct this? Your Honor, I have no ability to correct this. I just asked what you think. Whether you've got ability or not, I don't know. Your Honor, I think Dr. Jackson's more serious concerns, given that he's under seven-year probation and he signed the settlement agreement with 204 days of suspension and that he's currently undergoing proceedings to revoke his medical license. Actually, excuse me, to revoke probation. So I think those matters might be more prominent in Dr. Jackson's mind right now. But they're not part of this record. You perhaps could have made them part of this record. Your Honor, the settlement agreement is part of this record. The settlement agreement from early 2005, which ended the original proceedings from which Dr. Milgram's note delayed the legal proceedings or was attempted to delay the legal proceedings. So that settlement agreement is part of the record. You have that with you? Yes, I do, Your Honor. I haven't noticed that in the file presented to us. It's part of the appellee's supplemental excerpts. Well, do you want to read it to us? You just want me to read what part of the settlement agreement you're on? Your Honor, one second. While you're looking for that, can you tell me whether you have any knowledge in the record whether Dr. Jackson's medical license was in delinquent status for failure to follow the education requirements during the period of the interim suspension order? Yes, Your Honor, that is discussed within, I believe, the briefing on the ex parte petition for the interim suspension order. Okay, I have the stipulated settlement and disciplinary order from 2005. It starts at SER 91, I believe, something like that. Sorry, SER 214. Oh. Okay. And Dr. Jackson's license was revoked. That action was stayed subject to seven years of probation, 240 days of suspension, requirement to undergo educational courses, monitoring of billing and practices, and certain restrictions on his practice of medicine, correct? That's correct, Your Honor. And that order was also reported to the databank? Yes, Your Honor, it was. There is a copy of that report within here as well. That was reported later in 2005. And it was in April that the databank got the order dissolving the order that's at issue here? Yes, I believe that was April 25th of 2005. I thought it was April 7th, but it doesn't really probably matter. That's okay. I'm sure you know the details better than we do. I think one thing that's important in this case is that we don't confuse temporary and definite. Temporary was a reference to the disability, and Dr. Jackson's disability, as he proclaimed himself, assuming anyone wants to consider it that way, was temporary, so therefore it doesn't qualify as a disability under the ADA. Indefinite refers simply to the term of the court order that was reported, and Cummins has established that in the declaration, and it's not been disputed other than dictionary discussions of what indefinite means. So there are two different things. Temporary and indefinite are not equal. And they don't refer to the same thing. One refers to him and one refers to the court order. The main thing that bothers me, you've already told us he's a bad guy, so why should we worry about him? What bothers me is the way this was handled initially. You know, one lawyer, he goes and files something. He's not aware that something else has come in that changes the picture. And just the way it was dealt with, it seems to me it was negligently handled. And you're dealing with somebody's life and reputation, and you'd think that the state agency would be a little more careful about those things. Who was on the board of medical examiners then? There would have been a number of people, Your Honor, and I'm not aware of the names at that time. It's changed since then. But they have to rely very much on what the staff and counsel for them recommend. Is that not accurate? That's correct, Your Honor. And they were not very careful, were they? Your Honor, I think, as has been noted in the record, they weren't aware of the official guidebook. Now, they perhaps should have been aware of it, but they weren't, and so given the information that they were aware of at that time, they tried to do their duties as best they could. But that was part of their job, right? Part of their responsibility. Isn't that true? That is true, Your Honor. So they were incompetent in the way they handled this. Would you agree to that? No, Your Honor. They were sloppy. Would you agree to that? I will agree that they should have been aware of the official guidebook, but they were not, and so they made a decision based upon the knowledge they had at that time, trying to follow the law and the regulations that was applicable to them. And what they ended up doing at that time was incorrect. Under the official guideline, they should not have reported a state suspension, Your Honor. This case is, in my mind, very inadequately handled by both sides. From the standpoint of what the state did or did not do, I cannot understand why they didn't immediately make sure that everything was expunged from the database and then go forward from there. What are your comments on what Judge Fletcher said? Your Honor, I think I've addressed that, because I think that there's criticism here of the fact that the board did not do something further than issue the report reporting on the dissolution of the interim suspension or suspension state, Your Honor. But I appreciate that criticism. Thank you. All right, if there are no further questions, Your Honor. Well, do you think the board owes the doctor an apology just on that? Your Honor, I'd be willing to discuss further non-legal remedies with plaintiff's counsel after the hearing. All right. All right, so if there are no further questions, I ask that the court refer some rejection. Have you thought about going to our mediators? Tried that? I don't think a mediator would be necessary, because that would be regarding the resolution of the lawsuit, and I believe that summary judgment should be affirmed, Your Honor. Thank you. All right. Is Dr. Jackson in the courtroom? Good morning, Your Honor. Are you Dr. Jackson? I am. All right. Good morning. Thank you. Good morning, too. Your Honors, I'd like to say a word about the claim of immunity in this case under Section 11137, Subdivision C. The board claims to be immune because it didn't know that the report was false. And it relies on the ignorance of the employee, Cummins, and it's not the usual thing that the ignorance or incompetence of an employee will immunize the entity. I think that we are Your problem, counsel, is that the entity is an arm of the state and probably is immune, at least from damages. It may be liable for corrective action or something of that sort, but I think you should check the law on immunity. Your Honor, assuming that that's true, the summary judgment still ought to be reversed. In Shakespeare's Othello, he says, Who steals my purse steals trash. But he that filches from me my good name robs me of that which not enriches him, but makes me poor indeed. And this is an important matter for Dr. Jackson. We believe damages would be appropriate as well, but it's very important that his name be cleared. On the immunity question, I just wanted to point out that the Attorney General's office was, of course, aware of all these proceedings, and its knowledge should be imputed to the board. As the appellee states in his brief on page 37, the board operates through the actions of its staff and agents, such as DAG Deputy Attorney General Feldman. Yeah, okay. But there's a lot of complexities in this area. Anything further? No, Your Honor. The matter is submitted. Thank you, Your Honor. All right. Thank you. All rise. This court is adjourned.
judges: Fletcher B. , Pregerson, Graber